**MILLER et al. v. UNSICKER et al.**
(No. 2142.)

Court of Civil Appeals of Texas. El Paso.
April 12, 1928.

**1. Mines and minerals ⚮78(7)—Correspondence held not to show extension of time for lessee to resume drilling for oil and gas.**

In action by lessor's grantees to recover oil and gas claimed under lease, correspondence between lessor's agent and defendant lessee *held* not to show agreement for extension of time to resume drilling after cessation of operations, but merely negotiation for extension, to be evidenced by new lease on different terms, on which parties' minds failed to meet.

**2. Evidence ⚮343(8, 9)—Certified copy of deed is inadmissible without proof of execution and contents, except on compliance with statute as to filing and notice (Rev. St. 1925, art. 3726, as amended by Acts 40th Leg. 1st Called Sess. [1927] c. 73).**

It is error to admit in evidence a certified copy of deed from county deed records, without proof aliunde of its execution and contents, except on compliance with requirements of Rev. St. 1925, art. 3726, as amended by Acts 40th Leg. 1st Called Sess. (1927) c. 73, as to previous filing and notice.

**3. Appeal and error ⚮1170(7)—Judgment for plaintiffs, in whose favor retrial must again result, will not be reversed because of correctable error in admitting certified copy of deed (Court of Civil Appeals Rule No. 62a; Rev. St. 1925, art. 3726, as amended by Acts 40th Leg. 1st Called Sess. [1927] c. 73).**

Under Court of Civil Appeals Rule No. 62a, judgment for plaintiffs, who set up deed and its record in petition, will not be reversed for technical error in admitting certified copy thereof without complying with requirements of Rev. St. 1925, art. 3726, as amended by Acts 40th. Leg. 1st Called Sess. (1927) c. 73, as to previous filing and notice, in absence of anything impeaching validity of deed, where retrial, on which objection would be readily met, must again result in plaintiffs' favor on other evidence.

**4. Costs ⚮230—Costs of unsuccessful appeal will be taxed against appellees offering certified copy of deed in evidence without complying with statutory requirements as to previous filing and notice (Rev. St. 1925, art. 3726, as amended by Acts 40th Leg. 1st Called Sess. [1927] c. 73).**

There being no excuse for plaintiffs' failure to comply with requirements of Rev. St. 1925, art. 3726, as amended by Acts 40th Leg. 1st Called Sess. (1927) c. 73, as to previous filing and notice, before offering certified copy of deed in evidence, costs of defendants' appeal will be taxed against plaintiffs, though judgment is affirmed.

Appeal from District Court, Pecos County; C. R. Sutton, Judge.

Action by D. K. Unsicker and others against G. Guy Miller and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Wright & Gibbs, of San Angelo, and W. B. Silliman, of Ft. Stockton, for appellants.

Williams & Jackson, of Ft. Stockton, and Burney Braly, of Fort Worth, for appellees.

HIGGINS, J. On June 18, 1925, the Jasper County Realty Company, a corporation, leased to G. Guy Miller, for the purpose of mining and operating for oil and gas, laying pipe lines, etc., sections 11, 13, 27, and 29 in block 10, H. & G. N. R. R. Co., survey in Pecos county. Among other conditions the lease provided that the cessation of drilling operation for 60 days should be construed as an abandonment of such operations and should terminate the contract.

April 4, 1927, the lessor conveyed said land to various individuals, appellees herein, who later filed this suit against Miller and others claiming under him, to recover the oil and gas claimed under said lease and to remove cloud from title cast thereby.

A peremptory charge was given, in response to which verdict was returned and judgment rendered in plaintiff's favor, from which Miller appeals. The basis of the suit was cessation of drilling operations for more than 60 days and breach of other express conditions of the lease.

In addition to a general denial, Miller set up that on December 7, 1926, the lessor by its authorized agent, E. B. Macy, gave him an extension of 30 days in which to commence drilling again upon the land; in pursuance of such extension he contracted with one Embry to drill upon the land according to the contract, but Embry was prevented from so doing by the unauthorized cancellation of the lease by the lessor after the extension was granted.

[1] The evidence relating to the alleged extension agreement is undisputed and as follows:

In response to request for extension Macy, on December 7th, 1926, wired, and wrote Miller a letter, as follows. The telegram reads:

"Our Company will renew four section lease, providing drilling is begun within thirty days to complete well on 29. Would like to reserve one-quarter out of each of two sections. See letter."

The letter reads:

"I wired you today that our Company would reinstate lease 4 Sec. 30 days to resume completion of well on Sec. 29. Our boys would like very much to reserve a quarter out of each section, but would be satisfied to reserve a quarter out of each section except 29, as we presume you would not care to let us reef out a quarter of that section. However, what we desire is *action* and a completion of the well on 29.

⚮For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Our attorney thinks it would clear matters up better to date for you to release the old lease on the 4 sections and we execute a new one covering whatever we agree.

"Nothing would please me better than for you to get financed so you can go ahead. Therefore, if you have any chance to do some quick work let us hear from you. If we should get together on a renewal of the deal, I impress upon you the importance of keeping me fully advised every time you can how you are getting along. As to coming down to see you, will say I might when it looks like something was going to be accomplished."

On December 27, 1926, Miller wrote Macy as follows:

"Now about the well on Section 29; I think you are right about making a new lease on the four sections, 11, 13, 27 and 29, but to hold out 160 acres from the three sections, 11, 13, and 27, would work a hardship and I would not like to see anything done that would stand in the way of testing either one of the four sections to 2000 feet test, actual work to begin in thirty days and make it the regular straight five year commercial lease with one dollar rental. Said rental to be paid after first year in case commercial oil is not found. I will at once proceed with the matter of completing the well in Section 29. There is no longer any danger of the operator holding land on one well if he gets oil, for the case is, that the operator usually lets other companies in on the acreage and if he gets oil then all drill.

"There has been two drawbacks with the four section lease. First, the drilling clause to forfeit in case no well was started in ninety days after the completion, and second, the title, which has been clouded by the Grant lease, you of course know I have taken on lots of grief to clear up the title, but it still remains clouded from the fact of Grant assigning to the Adams Oil Company and they in turn selling leases in five and ten acre lots to people throughout the United States. The case is that no company is interested in buying a lawsuit. This latter objection can now be cleared as I believe this Adams bunch have gone to the end of their rope. The enclosed letter, which after you have read it, please return, is about the situation with Adams. This matter should be cleared up and I can do it now, but unless my interests still remain in the lease, I cannot see that I could afford to spend time or money with it." * * *

Miller testified that, acting upon the telegram and letter of December 7th, he made a verbal contract with Embry for the latter to go on section 29 and complete the well, but Embry did not do so because he did not want to buy a lawsuit.

The correspondence between the parties wholly fails to show an extension agreement. It merely evidences negotiation looking to the granting of an extension to be evidenced by a new lease upon different terms. It wholly fails to show that the minds of the parties met upon the terms of the contemplated new lease. The court did not err in holding that

5 S.W. (2d)—40

an extension agreement as pleaded had not been proven.

[2] This conclusion renders unnecessary the consideration of any of the remaining propositions submitted by appellant except the one relating to the admission in evidence over objection of a certified copy of the deed from the original lessor to the plaintiffs.

Appellee called as a witness the secretary of the lessor and attempted to prove by him the execution and contents of such deed by carbon copy thereof. Upon proper objection the evidence was excluded. Thereupon affidavit was made and filed of loss of the original and a certified copy of the deed admitted over objection that the statutory provisions with respect to filing and notice had not been complied with. Article 3726, R. S., as amended by chapter 73, p. 198, Acts 40th Legislature, First Called Session.

It is only by virtue of the statute that a certified copy from the county deed records is admissible in evidence without proof aliunde of the execution of the deed and its contents. It is error to admit such copy without complying with the requirements of the statute as to previous filing and notice. Henry v. Bounds (Tex. Civ. App.) 46 S. W. 120.

[3] But it would be useless to reverse this judgment because of the error in the admission of the copy. The present objection would be readily met upon retrial, and upon the other evidence in the case such retrial must again result in favor of the appellees.

The plaintiffs in their petition set up the deed and its record, thus notifying appellant they were relying upon same. There is not the slightest suggestion of anything to impeach its validity.

In Hill v. Walker (Tex. Civ. App.) 143 S. W. 687, this same situation arose. In refusing to reverse and remand for error in admitting the certified copy, it was said:

"Ought we to reverse and remand a case for a new trial in which it is reasonably certain that no different judgment will or ought to be rendered than that which was rendered? We think not, and for this reason, even if it be conceded that there was a technical violation of the rules of evidence in the admission of said deed, we hold that the same is not sufficient cause for reversing and remanding this case."

Writ of error was refused.

It seems to us this is the proper view of the matter, and we decline to reverse for the wholly technical error in admitting the certified copy. Rule 62a.

[4] There was no excuse for appellees' failure to comply with the statute if they desired to offer the certified copy in evidence. Therefore the costs of this appeal will be taxed against them.

Affirmed.